UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTIAN MIRANDA,

    Plaintiff,

v.

CARLOS FLORES, et al.,

    Defendants.

Civil Action No. 19-12029-LTS

MEMORANDUM AND ORDER

February 12, 2020

SOROKIN, D.J.

    Christian Miranda, who is incarcerated at MCI Shirley, has filed a civil rights complaint in which he alleges that he has been denied adequate medical care for a debilitating back condition. The filing fee has been resolved,[1] but summonses have not issued pending the Court's preliminary review of the complaint. For the reasons set forth below, the Court will require Miranda to file an amended complaint.

## I.    Court's Authority to Review the Complaint

    The Court is authorized to conduct a preliminary review of Miranda's complaint pursuant to 28 US.C. §§ 1915 and 1915A. These statutes authorize federal courts to dismiss a complaint sua sponte if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28

---

[1] In an electronic order dated October 23, 2019, the Court allowed Miranda to proceed in forma pauperis with regard to the filing fee. If Miranda seeks a waiver of prepayment of any other cost or fee, he must file a renewed motion for leave to proceed in forma pauperis accompanied by a six-month prison account statement.

U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b). In conducting this review, this Court liberally construes the complaint because the plaintiff is proceeding pro se. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## II. Allegations and Claims in the Complaint

### A. Plaintiff's Factual Allegations

The Court summarizes the complaint, treating all non-conclusory allegations as true for purposes of this preliminary review.

In 2009, Miranda was diagnosed with degenerative disc disorder and was prescribed Percocet and Flexeril. Later the same year, Miranda became a pretrial detainee and was housed at MCI Concord. Although he informed staff at MCI Concord of his back condition, he was not provided any medication to treat his pain. At some point in time, a physician at MCI Concord informed him he would be treated as a person needing "chronic care," and that he would be seeing qualified physicians to treat his condition.

Sometime in 2012, Miranda was transferred to MCI Shirley. Medical care personnel at that institution, including nurse practitioner Carlos Flores, refused to acknowledge his "chronic care" status. Flores told Miranda that he was merely suffering from arthritis rather than from a disc disorder. Flores refused to prescribe Miranda Flexeril and Percocet. Instead, Flores prescribed other medications that decreased Miranda's mobility due to pain and sickness.

After Miranda's conviction and sentencing in June 2014, he remained in custody at MCI Shirley. Flores denied Miranda's requests for ice, Flexeril, and Percocet to treat the plaintiff's disabling back pain. Instead, Flores attempted to give Miranda medications that had previously proved to be ineffective and had even exacerbated his condition. Flores also denied Miranda's request for a medical order that he be assigned a bottom bunk.

2

Shortly thereafter, Miranda was transferred to a different unit within MCI Shirley and assigned a top bunk. Although he notified prison officials that he could not climb the ladder due to his condition, Miranda was informed that if he refused the top bunk, he would be placed in segregation. When Miranda attempted to climb to the top bunk that same day, his muscles locked up and he fell onto the floor on his back. After spending two days in the Health Services Unit following this fall, he was given a bottom bunk by a correction officer.

Shortly after Miranda was assigned to a bottom bunk, he suffered a painful episode during which he was completely immobilized. Any attempt to make even the slightest movement caused a sharp pain in his lower back which prevented him from moving. For the next few weeks, the excruciating pain continued, abating only when he was given an injection that rendered him essentially unconscious and allowed him to sleep. During this period, Miranda asked for, but was denied, the medication for which he had previously been prescribed. Further, no appropriate assessment of his condition—which would have shown that his condition had a neurological component—was undertaken. Miranda's requests to be transported to an emergency room were denied.

After Miranda's family and community members contacted MCI Shirley concerning his condition, Miranda was sent to Shattuck Hospital for an MRI scan. The imaging showed that Miranda suffered from "Cauda Equina," which usually requires urgent surgical treatment. Thereafter, Dr. Angeles, another physician at MCI Shirly who had also been refusing treatment for Miranda, informed him that he would be transported to a hospital for a non-urgent visit.

On July 26, 2014, Miranda was transported to Boston Medical Center ("BMC") by ambulance. After undergoing another MRI examination, Miranda was diagnosed with stenosis of the lumbar spine, including severe stenosis of the central canal where there were disk

extrusions and a disc fragment.  Miranda was administered morphine in the hospital and prescribed Flexoril, Percocet, and Oxycodone.  He was referred for a neurosurgery appointment.  Upon his return to MCI Shirley, Miranda was given the medications prescribed while at Boston Medical Center.  The medications provided Miranda some relief, and he was able to ambulate himself with a walker, cane, or wheelchair.

On August 1, 2014, Miranda had a consult with neurosurgeon Dr. Nirav Patel, who informed Miranda that he needed surgery to remove a disc fragment that had lodged itself in the nerve canal.  Dr. Patel also informed Miranda that the disc fragment was the cause of his severe pain and severe stenosis.  Miranda felt fearful about the proposed surgery.

Once Miranda returned to MCI Shirley, Dr. Angeles summoned him to speak on the phone with a staff member in the neurosurgery department of BMC.  This person tried to convince Miranda to pursue an alternative course of treatment before resorting to surgery: a course of three steroid shots.  Miranda agreed, and he received the first shot in October 2014.  However, over the next two years, he repeatedly asked for, but was refused, the second and third shots.  His demand for surgery was similarly denied.  During this two-year period, he received five sessions of rehabilitation treatment at MCI Shirley, but ultimately the rehabilitation department at the prison told him that, until he had surgery or some other form of treatment, the department's services would not help him.

Sometime in 2016, Miranda requested and received his medical records from BMC.  He showed the records to medical providers at MCI Shirley, who then agreed to provide the steroid shots as previously ordered.  Although he was supposed to receive the shots every thirty days, he received one injection in June 2016, another in October 2016, and the third in 2017.  Although the steroid shots did not provide appropriate relief, Miranda has not been sent for surgery.

Sometime in 2019, Miranda experienced a painful flare-up that prevented him from walking, moving, sitting, sleeping, or standing for longer that a few minutes. If he straightened his body or bent all the way over, his experienced numbness in his legs. Miranda requested, but was denied, treatment.

On August 6, 2019, Miranda had a spine consult during which an MRI from earlier that year was reviewed. This image showed "multilevel disc degenerative disease and lumbar stenosis, most severe at L3-L4 where a large right sided herniated disc fragment, which obliterates nearly the entire spinal canal and is causing severe cauda equina compression, with severe stenosis from a broad based disc bulge at L4-L5." Compl. ¶ 75. Miranda "brought these medical records and others back to the Medical Care Providers at MCI Shirley, attempting to show them his problem," but "he was dismissed and ordered to leave the Health Services Unit, otherwise facing discipline. Id. ¶ 76. Miranda concludes:

> From 2009, to the present, the Plaintiff has presented with a severe medical condition, which has warranted surgery, and every medical care provider who has had contact with the Plaintiff between these time periods, have either, refused to acknowledge the medical condition, or, refused to provide proper treatment.

Id. ¶ 77.

**B.    Claims and Parties**

Miranda brings this action under 42 U.S.C. § 1983 ("§ 1983"), seeking monetary and injunctive relief for the "denial of medical care and the deliberate indifference to his medical needs, amounting to cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution." Compl. ¶ 1. He is also bringing claims for "medical malpractice and negligence by administrative personnel." Id.

Miranda brings this action against the following individuals: Carlos Flores, Nurse Practitioner at MCI Shirley; Elizabeth Louder, Health Services administrator at MCI Shirley; Dr. Maria Angeles, Medical Director at MCI Shirley; and, "Medical Care Providers ('John/Jane Does')." All of these parties are being sued in their individual capacities. Miranda is also suing Massachusetts Partnership for Correctional Healthcare, "also known as 'Wellpath' or 'Correct Care Solutions.'" Compl. ¶ 7.[2] The Court will refer to this defendant as Wellpath.

The complaint is in seven counts. In counts one through four, Miranda brings § 1983 claims against Flores, Louder, Angeles, and the John/Jane Does for cruel and unusual punishment based on deliberate indifference to his medical needs. Counts five and six are against Flores, Louder, Angeles, and the John/Jane Does for violations of Article of 26 of Massachusetts Declaration of Rights based on deliberate indifference to medical needs. Count seven asserts a medical malpractice claim against Wellpath.

## III. Discussion

Miranda's claims against the individual defendants are subject to dismissal because he has failed to identify any specific conduct by these defendants that occurred within the period of limitations.

Miranda's chronology of the alleged events begins in 2009 and continues through 2019. In counts one through six, he incorporates all previous paragraphs and states that conduct of each defendant "descripted herein," or "described above," Compl. ¶¶ 80, 84, 88, 92, 96, 100, and it appears that he seeks to hold the defendants liable for any alleged misconduct during that entire period. In Count seven, Miranda seeks to hold Wellpath liable for events occurring since 2012.

---

[2] On its web site, the Massachusetts Department of Correction states: "We work with Wellpath, formerly Correct Care Solutions, to provide healthcare services for inmates." See https://www.mass.gov/service-details/inmate-healthcare (last viewed Jan. 31, 2020).

The statute of limitations for all of Miranda's claims is three years. See M.G.L. ch. 260 § 2A (3-year statute of limitations for personal injuries), §4 (3-year statute of limitations for medical malpractice), § 5B (3-year statute of limitations civil rights actions); see also Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (limitations period for an action under 42 U.S.C. § 1983 is "borrowed" from the forum state). This means that, subject to any applicable tolling doctrine, Miranda had three years from the date a claim accrued to file suit thereon. Miranda's claims accrued when he knew or should have known that the defendants had harmed him. See Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) ("[A] § 1983 claim accrues when a plaintiff knows or has reason to know of his injury."); Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 205-06 (1990) (claim accrues "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that [he] has been harmed or may have been harmed by the defendant's conduct").

Miranda filed his lawsuit on September 27, 2019. Thus, any claims that accrued prior to September 27, 2016 are time-barred unless a tolling exception applies. Even assuming it took up to a year for Miranda to exhaust his administrative remedies and that the statute of limitations was tolled during this time,[3] any claims accruing prior to September 27, 2015 would be precluded by the statute of limitations.

Here, Miranda has not identified any specific conduct of Flores, Angeles, or Louder that occurred after 2014. The last specific act of alleged misconduct of Flores, see Compl. § 32, occurred before Miranda was sent to BMC on July 26, 2014, see id. § 47. Similarly, the last

---

[3] Although the Court is not ruling on the question at this time, it is worth noting that judges of this Court have found that equitable tolling applies while a prisoner exhausts his administrative remedies. See Silvestri v. Smith, C.A. No. 14-13137-FDS, 2015 WL 1781761, at *7 (D. Mass. Apr. 17, 2015); Dillon v. Dickhaut, C.A. No. 12-10713-GAO, 2013 WL 2304175, at ** 4-5 (D. Mass. May 24, 2013).

7

identified act of alleged misconduct by Angeles was on or about August 1, 2014. See id. ¶¶ 51-54. Miranda does not allege any specific conduct by Louder.

If Miranda wishes to prosecute claims against Flores, Louder, and Angeles, he must file an amended complaint in which he sets forth specific factual allegations concerning each of these defendants from which the Court may reasonably infer that these defendants were directly involved in the violation of Miranda's federal or state rights. Miranda must identify the approximate date of the relevant events. Although, for purposes of context, Miranda may include in his amended complaint allegations of events occurring outside of the period of limitations, his causes of action must be based on events within the period of limitations.

Arguably, Miranda's malpractice claim against Wellpath is not patently time barred. He alleges that Wellpath's employees provided medical care at MCI Shirley and that, less than three years prior to the filing of this action, those unidentified employees failed to provide adequate medical care. However, in the absence of any viable federal claim, the Court cannot exercise subject matter jurisdiction over the state law malpractice claim unless Miranda and Wellpath are "citizens" of different states and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).[4]

## IV.  Conclusion

In accordance with the foregoing, the Court hereby orders Miranda to file an amended complaint within thirty-five (35) days of the date of this order. The amended complaint must

---

[4] "For purposes of diversity [subject matter jurisdiction], a person is a citizen of the state in which he is domiciled." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008). In the cases involving prisoners there is a rebuttable presumption that "the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state." Hall v. Durran, 599 F.3d 70, 72 (1st Cir. 2010). A corporation is deemed to be a citizen of every state in which it has been incorporated and the state in which it has its principal place of business. See 28 U.S.C. §1332(c).

cure the pleading deficiencies discussed above.  The amended complaint will completely replace the original complaint and must stand on its own without reference to the original complaint.  Failure to comply with this order in a timely fashion may result in dismissal of the action.

SO ORDERED.

/s/ Leo T. Sorokin
UNITED STATES DISTRICT JUDGE